The next case on the call is DACA. DACA this morning is Agenda No. 10, No. 125133, Restore Construction Company, Inc. et al. v. School Board of Education of Proviso Township School District No. 209. Mr. Gleason. Good morning. Chief Justice Burdick, counsel, and may it please the court, my name is William Gleason and I represent the Board of Education of Proviso Township High School District 209. Centuries-long holdings from this court have made it clear that whether there is a statute or an ordinance prescribing the method by which an officer of a municipal corporation, or in this case a quasi-municipal corporation, may find the municipality or that entity to a contract, that method must be followed. If that method is not followed, there can be no implied contract or implied liability. In this case, the school district or the school board is not a defense school board. Under the Illinois Constitution, it has limited power. Those powers are those expressly granted to it, except for within the school board. In this case, there are several statutes that specifically prescribe the means and the mechanisms of a school board to enter into a construction contract. They would be found in Sections 20 and 21 of the Illinois School Code, which require that for construction contracts in excess of $25,000 that they be bid and let to the lowest responsible bidder. Then there would be Sections 10-7 and 10-12 of the Illinois School Code, which make clear that when there's going to be a vote of a financial mechanism of the Board of Education, that it be approved through a roll call vote, and that it be approved by a majority of the members participating in the vote. These mechanisms that are deemed necessary in order for the Board of Education to exercise power simply never occur here. In this case, there were two contracts that formed the basis of the Restored Construction Company Committee's work at the school. The first one was executed on May 22, 2014 by the superintendent. Under Illinois law, it's very clear that the superintendent had no authority to execute that contract. On August 12, 2014, there was a second contract that was executed singularly by the president of the Board of Education. Neither of these contracts were presented to the Board of Education. Neither of these contracts were voted upon by the Board of Education. Neither of these contracts were left pursuant to a public bid, and neither of these contracts were ever approved by the Board of Education. What effect, if any, does the financial oversight panel on the fact that the person doing a Todd refill signed the contract? What effect does that have, if any, on your arguments? From our perspective, it has no effect with respect to liabilities being imposed upon the Board of Education. As Your Honor knows, under Section 1H of the Illinois School Code, the financial oversight panel is a separate and distinct legal entity which is capable of being sued. And in fact, in the First Amendment complaint, which is in the record here, Mr. Drayvall and the financial oversight panel were indeed sued. They are no longer parties to the appeal because in that part of the case, Restore intended that essentially the financial oversight panel approve the contracts and impose them upon the Board of Education. But much like the Board of Education, the financial oversight panel has a statute that requires it to approve mechanisms. Because it also has the power to approve contracts unto itself. It never had a vote. It never did anything like that. So it has the same statutory and common law bar that would have been at issue. So the financial oversight panel and the fact that Mr. Drayvall executed those contracts as well doesn't impact the liability to the Board of Education itself. The question that's presented here to the court is at this point somewhat narrow. It is whether or not there can be implied liability to a claim of quantum merit or a contract implied in law when the underlying contractual arrangements fail to comply with the necessary statutory requirements in order to impose a contract or a liability on a Board of Education. For the reasons we set forth in our briefs, we believe the answer to that question is no. Starting with, this court, for over a century as well, has held that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority. And this is even so if the agent himself may have been unaware of the limitations of his authority. In other words, this court, for over a century, has imputed knowledge onto the contractors seeking to do business with a public entity to know the limitations of the power of that public entity and specifically to know the limitations of the powers of agents of that public entity. By imputing this knowledge onto the contractors, this court has imposed all the risk of compliance onto the contractors. If they proceed to perform work pursuant to contracts that are void ab initio as a matter of law, they do so at their own risk. So whenever a contractor seeks to do business with a public entity, they are imputed to know that the persons who are executing the contracts, whether they do or don't have the authority. So in this case, viewing the May 12, 2014 contract and viewing the August 12, 2014 contracts, Restore executed those contracts knowing that the individuals executing them did not have the authority to do so. And of course the school board knew that too. The school board didn't know that because as the record reflects, the contracts were never provided to the school board to be approved. All the work was being done and all the money was paid until the last that's left? I apologize. There was certainly work being done, but there wasn't even payroll. There was no payments being made by the Board of Education. So it's not even the situation where you may see in circumstances where the board is approving bills for a contractor and then comes in and says, Well, we didn't know that we were supposed to pay them. You've been approving the bills. That never happened here. Just out of curiosity, what caused the payments to stop? It came from the insurance company? The record reflects that. It's in the record and the attachments to the motions to dismiss the First Amendment claim. But the insurance company refused to continue making payments to the contractor because they had a dispute about the value of the work and the information that was being provided by the contractor to the insurance company. But the insurance company was approving all of the payments separate and aside from the Board of Education. It wasn't asking its permission to issue payments. It was doing it separately and distinct from the Board of Education. Travelers is no longer party to this appeal. Does that mean they still may be liable to the contractors who are suing? The contractors voluntarily chose not to proceed with their claims against travelers. So at this point, I would suspect that they have waived their claims against travelers. So they're just out of the case? The plaintiffs have not appealed the circuit court order's grant of a motion to dismiss in favor of travelers. That's accurate. The court's longstanding ruling and their longstanding holding imputing this knowledge onto contractors is intentional. It has a purpose behind it. And that purpose is that if vendors are able to obtain compensation for acts done in contravention of the statutory preclusions that are necessary in order for public entities to exercise power, the vendor is encouraged to risk evasion of the statute. In addition, if the public officials are free to make the payments to the vendors the way that they would not be able to do directly, indirectly, you've encouraged public officials no longer to require strict compliance with the statutes. Restore presents to you a sort of tails-I-win, heads-you-lose proposition here. Either they enter into the contract that they knew at the time it was executed, the person's executed, could never do it, and they couldn't buy the board, and they get the money and everything goes great. Or they get caught and say, the statute didn't get followed, but we're still entitled to compensation anyways. In that realm, you haven't really encouraged compliance with the statute at all because the contractor knows that no matter what happens, they're going to be entitled to remuneration. Steadfastly requiring compliance with the statutory bidding requirements and the statutory requirements that public entities actually approve these types of expenditures through their elected officials will definitely encourage both contractors and public officials alike to diligently follow those statutes. This court, and we've cited the cases, and I just want to briefly run through them, has routinely denied this type of relief to contractors. The first case was in 1875, which is Clark v. The School Directors of School District No. 1. They're the school district's purchase of science equipment, and they did it on credit, and the statute precluded them from doing so. It's unquestioned that the school had the equipment, they enjoyed the benefit of the equipment, but the court held that you could not hold them liable to pay for the reasonable value of having that equipment because the statutory preclusions were not followed. And in that case, it's a step removed from what we have here because that was the entity itself actually exercising power as opposed to an inferior agent who lacked authority. The case of Hope, the City of Hope case that we've cited in our brief, I think is very close to what this case is, Hope v. City of Alton. There, a municipality approved a contract for an attorney to represent them. They passed an actual ordinance allowing the attorney to proceed, and then the attorney sought compensation. And this court held that the attorney could not get any money out of the municipality despite the fact that no one disputed that he didn't work. Nobody disputed the fact that there was value to his legal services. But the court refused to impose a liability or either contractual or other kind of merit. And as I reach back into the appellate court case for Hope v. City of Alton, that case was one that was filed in general assumption. And it was filed both under a special and a common assumption. A special assumption is what we would probably now call a breach of contract action, but a common assumption is in fact a quantum merit claim. It is one of the three levels of assumption that can be filed under a common assumption. So that case now is almost on all fours of what we have here before Your Honors. I'm going to ask you to go back to something you were talking about policy ideas earlier about incentives for contractors to be very aware when they're dealing with public entities as to what is required. Here it's in question that $1.8 million or so dollars worth of work was in fact provided to the board. And yet they're not going to have to pay that under your theory. So what incentive is there for a public entity to ensure that its own authority is used? Isn't there a burden on the – shouldn't there be a burden on the municipality, the entity itself? No, Your Honor, and I would direct you to this case, this court's case in Patrick Engineering, where the court was very, very clear that the risk of proceeding was on the contractor itself as opposed to the public entity, even if the agent did the same result. There's not a lot of risk here. The board got a windfall here. But your policy argument is that when we balance these things, the risk that there should be an incentive for everyone to know what the rules are and to follow the rules. Why would a public entity ever comply with the statutes? Why would it ever sign contracts? Well, normally, because contractors wouldn't start doing work until they ascertained that the people that were executing the agreements actually had the authority to do it. And I think the policy that's been chosen by this court is when you're dealing with inferior agents, it's even ramped up a little bit more. You need to know that they actually have actual authority. That's what the Patrick Engineering case is about. It's not enough to say there appeared to be – they appear to have authority. There's no implied authority with respect to municipal corporations. There has to be actual authority. And the risk of compliance by this court was chosen to push onto the vendors themselves. But I think, Your Honor, the point is that most contractors, when they deal with a public entity, they do know what the law is, and they would have said, well, wait a minute, there wasn't a bid here. And the school code, if you wanted to tell me that there was an emergency, the school code presents a mechanism for you to no-bid this type of a contract. The rub is it requires a three-fourths vote of the Board of Education. So you'd have to put it in front of the Board of Education and have them approve it. You could do that, and once they approved it, then you would proceed. And if the public entity has actually exercised its authority, but maybe done it in an irregular mechanism, you start to get into that line of cases that Your Honor is referring, where the contract is somewhat avoidable. The problem here is it's been conceded, and it's very clear based upon this court's most recent holding in the Teamsters Local 700 case, that when there is a statute that requires a vote for an entity to exercise power, and it's not complied with, that contract is void ab initio. It can never be ratified. It's always ultra-virus. So in this respect, I think, Your Honor, that most contractors that are doing business with a public entity, they full and well know what the law is, and they require compliance. It's only when you, with this court's imputed knowledge, knowing what people can and can't do, decide to proceed anyways, that you do so at your own risk. And that's what Restore chose to do here, was to proceed at its own risk. Does that decentrify, if that's a word, the public entity wanting to comply with the Act, or if they can get away with it? They've got a loophole and out? Well, the public entity should always, I think we would agree, attempt to comply with the Act. But here, the public entity never did anything. This is a case of inaction by the public entity, as opposed to action by the public entity. But the case law here, from this court, is legion, in the context of where public entities would themselves approve contracts, but fail to have an appropriation, for instance. The vendors would still do all the work, and they would not receive any remuneration. So for decades, that's been the risk that contractors have understood when they sought to do business with a public entity. So they have to go the extra mile. And even if we were a private agency, I would point out that on an implied authority, you still have to act reasonably to understand if they actually exercised their authority. With respect to a public entity like the Board of Education, our minutes are posted, pursuant to law, on our website. So if Restore wanted to see, did the Board of Education ever approve this contract, which they're impeached to know it requires, they could have just looked on our website. They didn't do that. They just proceeded at their own risk. I know your argument is that it doesn't make any difference whether this is quantum merit or trying to enforce a contract, or I believe that's it. Mike, our position, Your Honor, is that with respect to a void ab initio contract, it doesn't matter if you're having a debate about a contract implied in fact or a contract implied in law, because all roads essentially lead to Rome, as they say. It's still going to release remuneration, and in fact, it could result in a windfall to the contractor, because they're telling you that they can have a claim in quantum merit, which means they get the reasonable value of the work. Well, contracts, especially those that are publicly bid, sometimes lower and limit the cap of that contractual liability. Once you remove that cap, the reasonable value of the services could be far in excess of what the price would have been had the matter actually been properly bid and approved. So the contractor could get, indeed, a windfall by engaging in conduct, which they were imputed to know they couldn't do. That seems to be a horrible policy outcome for public entities in the state of Illinois. There's a line of cases that says if the contract is within the power or authority of the municipality, but a portion of the contract may be beyond its power or the powers may have been irregularly exercised, the municipality may not assert such grounds to avoid the contract, where to do so would give it an unconscionable advantage over the party. That's kind of what we have here now, it seems. Brannager v. Village of Riverdale, diversified computer services, and some others. Respectfully, Your Honor, I would disagree that that's what we have here. You're referring to the two lines of cases. I think we started the analysis of the McGovern case. And we are in the first step, which is those cases where the contract could never have occurred because the steps necessary in order to execute the contract by the public entity, they just didn't occur. And when that happens, that contract is void ab initio. It never occurred. And if you look at the City of Hope case, that's not an irregular exercise of power. It's a power that you didn't have the authority to do. So here, the Board of Education didn't have the authority to have a subservient agent approve no-bid contracts. It never had that authority. So it didn't irregularly exercise the authority that it had. It never exercised any authority. And when you look at the contours of 20.21, coupled with the fact that you need a roll call vote of the elected officials in order to make this type of a liability against the school board, it means that you're in that first classification of the McGovern as opposed to the second classification, which is what Your Honor just read. And those typically involved cases where there's strange language in the construction contract about extras and the like, where the public entity would come in and they would approve the contract, they would vote on it, and then would come back later and say, oh, we've got you now. I think a fair example of that would be if I came in and argued, we approved, the Board of Education did this, we let it, we approved you, but at the meeting, we failed to comply with the Open Meeting Act because we didn't have a specific agenda item. That would be the line of cases that Your Honor is talking about. This here, by this court's holding in Matthews, this court's holding in Texas Engineering, and this court's most recent holding in the 150 MP Road LLC Teamsters case, it is saying that when you don't have that vote that's required in order for a public entity to exercise authority, you get into the first classifications of the McGovern, which is those that are utterly void, they are never ratifiable. And that's what we have here, Your Honor. With that in mind, I'd ask the court to affirm the circuit court and the reverse of the appellate court. Thank you. Thank you, Mr. Gleason. Mr. Ratzak? Good morning, Your Honors. My name is Michael Ratzak. I'm here on behalf of the Plaintiff Appellees to restore construction, restore restoration. I'd like to go right to what I think is the heart of the question here, at least I believe it's the heart of the question here. That is, what is, not so much what has the rule been in the past, but what should the rule be going forward? In a circumstance where the contract, for one reason or another, is not a valid contract, but the work has been done. Our position is simple. The reasons for not allowing quantum merit recoveries, recoveries in equity, that have been put forward sometimes by the court, not often, and surely by my opposing counsel, the board in this case, are that if the court would allow a quantum merit recovery in any circumstance like this, it could lead to all kinds of improprieties. There could conceivably be collusion between contractors and municipal officials. Mr. Ratzak, let's just back up just a minute. I just want to understand this. So you're saying, it seems like you're in agreement, that in light of MP and Matthews and how they would handle it, what they would have to say about void ebonitio contracts, that you want us to carve out an exception for quantum merit? Yes, I don't even call it an exception. I call it a parallel line of reasoning because although void contracts cannot be enforced, the reason they can't be enforced, I believe, is because they don't want municipality and municipal units stuck with contracts where whatever the contract says, that's what follows. There's no way for a court to go in and work an equity. The contract is what it is, and if there's a contract that shouldn't have been entered into, they do not want to preclude municipalities from protecting themselves. Looking at a parallel line of recovery, not one that the legislature looked at. We're not looking at what the statute says you must do or must not do in order to have a valid contract. We look to the judicially oriented remedy, and that's equity, and that puts us into, of course, quantum merit. And the only reason that's always been given by the courts and by the board for not allowing a quantum merit and equitable recovery is that if we allow contracts to exist where they should not have been found, we could encourage bad activity. We could encourage collusion. So really it's protection of the public, isn't that right? Protecting the public funds. You're not dealing with a regular business. You're dealing with a public entity. It's clear in all kinds of cases, and the court has agreed, the public gets more protection. Fair or not, the public gets more protection than the average person or entity. But our point is, in this case, the public gets all the protection they need and maybe more if these matters are handled under equity, under quantum merit. If it's a contract, it's a contract. There's not much that the entity can do about that. If it's equity, if it's quantum merit, the board in this case and the municipal entity in any case can raise all the defenses they want. The burden falls upon, in this case, us, to show that there was a request for the work, that we did the work, in this case that it was reported every step of the way along the way to the board, that there's the value of the work. The burden falls upon us to prove all of those things. We can't just look at a contract and say we performed it. And if this case goes to trial, the board has the opportunity to challenge the restore on any one of those things to show that there was something wrong here. If any one of the parade of horribles, as they can be called, that's been raised by the board could possibly exist in this case, and there isn't any evidence any of them do, then that will come out in the court of equity, and we will not recover. That's what quantum merit is all about. Once... I've not heard the board ever answer that point of ours. They've not explained why they are not adequately protected if the court allows quantum merit in this case. Now, obviously, there's all kinds of parameters, as I just said. We have to prove everything, and it's going to be up to a court to decide if there's any unfairness at all. There's also... Well, I think with the rest, they didn't know of the no-bid contractual arrangement, the amount of the contract at issue, or that they could be held liable. I mean, that's what they say they didn't know. That's what they say they don't. The problem... multiple problems. The contract was signed by the board president. We didn't go in the back room and have George, who's working in the accounting office, sign this. It was signed by a board president. The agreement here is that the payment will be... There's no question about it. The payment will not even come from public funds. The payment is going to come from the insurance company. All of it did, to answer Justice DeVille's inquiry earlier. The case against Travers involved an attempt to plead a direct action against them by Restore. Once the court found that there was no insurance coverage... I'm sorry, once they found there was no obligation, then they didn't have to cover it. If this case goes back down, presumably now that there is an opportunity for coverage, the coverage will come into play. The bottom line is we're not talking... So all of the things that they worried about will not be true. And, in fact, we know, assuming the pleadings are correct, and given all the work that went into this, we have a great deal of information, the board was surprised at what was going on all the time. It was a board architect, Leacack, that supervised the work. Mr. Dreyfuss supervised the work for both FOP and the board. He was, according to the complaint, he was an employee, a school board official, I think is what it's termed in the complaint. Both of them. Even if, and I'm not sure that this would be the case, even if at trial the board would be able to argue, look, Restore is at fault because they should have checked on these things. This was not a normal contracting situation. This fire struck in May. They wanted the school ready by September. Everything in the record shows we did the work. We got it done. Everybody agrees the job was done, it was done properly. To put the burden, in every instance, on the contractor, the vendor of services, to check to see if somebody on the municipal side has done what they're supposed to do, we don't bring the contract into the board meeting. That's done by somebody on the board. I don't see that it's unfair here to still allow us to recover against the board. If we agree with you? I'm sorry. If we agree with you, are we incentivizing noncompliance with the statute? If you agree with them, you are incentivizing noncompliance and one of the justices picked up a point that's near the end of my notes. This flows both ways. This idea that only the vendor can be the bad guy in this case, this isn't true. If I was on a municipal entity, why would I bother to take the contract and approve it? We've got it out. Let's see if he does the work. We're not happy. Let's just say we don't have to pay him. I can't see much of any of this being an issue anymore. It seems in the first cases, in the late 1800s and the 1910s, nobody trusted anybody on the city. You can almost read that in those decisions. They simply did. In an age of transparency, where everything's on television, everything's on the internet, everybody pretty much knows what's going on. Whatever motivated the courts in those days to say that we just need super protection because municipalities need it, I don't think that exists anymore. Are we worried today about sweetheart deals and no-bid contracts and those kinds of things where there's misuse of maybe public resources? Isn't that a continuing concern? And we are, and we should be. I'm a taxpayer like everybody else in this room. But the point is simple. Those are not concerns because those will all be addressed in the quantum merit hearing. If something is untoward, that's going to come out. There isn't any evidence of that here, and I don't think I saw any evidence of that in any of the other cases that we have. One small point, and that was the no-bid argument. The no-bid argument was only found in their reply in this court. The argument that the board made in their motions to dismiss and in the reply with respect to the third offended complaint did not make an argument about the bidding process being involved in why the board should or should not win in this case. That's been forfeited. And it might have made a difference at the time because we would have had to find out what had happened, why there was no bid, and ostensibly we could even prove, the restore might even prove that if there had been the bidding process raised early on while we were doing the work, there is a provision, as counsel said, that they can send out contracts and approve contracts without a bid. It's called an emergency situation. It's part of the code. For all I know, it may be that we would have had that vote by the board if it had been tried. The complaint alleges that at least the majority of the board would have approved of this contract if the board had done what it was supposed to do and bring it to itself for approval. We could have offered the same thing with regard to the bid process. Mr. Rasek, in response to Justice Thomas, you commented that these cases are much older. It's a different time. What about the Patrick engineering case? That's in the 2000s. Is that not applicable? It is. And don't you believe there's good law here? You're arguing an alternate. I agree. The best answer I have to that is that that was premised on a line of cases that ostensibly can be read both ways, and I don't see in that case or in the other cases the point made that I just made to this court. For some reason, this concept that the equitable approach is a parallel approach, not overwhelming, rebutting, undercutting the contract side of the case, wasn't made, at least it wasn't made that I can see in those opinions, and that if we look at it from that perspective, that the protections that Justice Garment talked about, that the public entities are being given, are preserved here, then there's no reason to have a rule that is an absolute bar to any quantum merit action against the municipality when there's a void contract. Keeping with Justice Kilpatrick's train of thought and the earlier question by Justice Garment, wouldn't Patrick be eviscerated, though? I mean, Patrick says that you have to ascertain whether there was authority by, in this case, by entering into the contract. But if we do, you call it a parallel universe or whatever, a parallel line or an exception, if we carve out an exception for quantum merit, isn't that case virtually overruled by that? Because a contractor then, if they proceed without ascertaining whether there was authority or not, and then go on to do a good job, as you said your contractor did, and quantum merit would apply, I mean, what contractor would worry about ascertaining whether there was authority or not at the get-go, if they knew they could always proceed under quantum merit? I think there's more than one answer to that. One, the question I ask, why would the municipal unit bother to approve it? I mean, it's a two-part dance, and why would a contractor knowingly ever not proceed in the best way they thought possible? Why would they ever take the risk that there's going to be some issue? If this Court accepts our position, is it really true that contractors are suddenly going to... What would contractors not do that they wouldn't otherwise do? The reason it happened here was because of the emergency nature of the matter. Things just kept rolling. The contract came in and the work started being done right away. We have an unusual fact situation in terms of explaining why the contract was not submitted by the Board internally for its own approval. But going back to Patrick, if we're looking at a contract case, then you look to see whether the contractor asked for it. When you're looking at equity, I'm trying to think of the best way. When you're looking at an equitable position, whether the contractor went to the Board and checked with the Board, have you internally approved this contract yet? We're talking still about a contract. This case is not about a contract. It's about an equity. So this duty on the part of both sides to make sure the contracting process got done should be an argument limited to a contract, an implied in fact case. We don't have that. We have an equity case. Once you get to equities, then you look back on all of that to see if something occurred in the contracting process that would make it unfair in equity. If there was any hint here that someone on either side tried to bypass the system, that would come out in the equity case. You touched on your argument a couple of times that this might be an emergency situation, excusing some formalities, but does it not even in that require approval after the fact if there's a contract entered into it? Yes, the section of the school code that – I'm sorry, Scott, the section of the law addressing this requires a three-quarter vote if there's an emergency, and that was never done here because, as we know, it wasn't raised to them. My point is that it might have been done, and the fact that bidding – my point was the fact that there is an exception because there's a bidding rule so that the need for a contract is not so devastatingly clear as everyone might think because they do have that power. It was not exercised here. Why it was not exercised, that might actually lead us into a voidable contract argument. I don't know what the circumstances were for not approaching it as an emergency because the bidding situation was not raised, and we never confronted that in the pleading. And then we move back to a voidable contract, and everybody's in agreement that we could have recovered if it's a voidable contract. And ironically, municipal entities would seem to be in the same risk of paying out public funds under voidable contracts as under void contracts. The two seem very, very close together, and yet there's been no run by bad contractors against municipalities based on voidable contracts. It's worked, and there's no reason. Mr. Resnick, if we were to hold that quantum merit is not available, would the plaintiffs have the right to recover some of the material from the high school? Replevant. Not a topic that was addressed at length below at all. My general research says no. If I delivered an air conditioning unit, it could be monstrous. I could replevant the air conditioning unit, but once you install the unit into the building, it becomes part of the real property. And that leads to what I think is my final point, is that a long time ago, this court allowed the replevant. Allowing, even without a contract. What we're really asking this court to do, and replevant, although it's a remedy in law, it's got equitable principles, equitable conditions. What we're really suggesting to the court, that if you're going to allow replevant, the kind of equitable remedy we're talking about here, really expands replevant to real property. That's all you would be doing. That seems not a difficult thing to do, nothing that would shake up the industry, and nothing that's going to change anybody's rights, except to ensure that the bottom result, as the courts have said, is fair. Unless there are further questions, we ask that the court confirm the fellow court's decision. Thank you. As I answered counsel's argument, he has just asked this court to overturn over 100 years of its precedent, and completely avoid any of the stare decisis issues that would come with taking that positive action. But to get straight to the matter, this court, in Matthews v. Chicago Transit Authority, a 2016 case, involved a similar question about how that vote impacts the ability of a public entity to be able to create a liability, cited to Rommel v. the City of Chicago, which is one of the cases from, I believe, 1907, that we cited in our brief. So this court certainly thinks that Rommel is still good law, because it's citing to it in 2016, and Rommel is one of the formalistic cases where they're describing the exact thing that we started our argument with, which is if you have a statute or an ordinance that sets how you can create a liability, an inferior agent cannot just ignore those things and do whatever they want and create either an implied contract or an implied liability. The court uses disjointed language. It obviously means two separate things. And they were very clear that they weren't going to allow you to do that. A few topics just to pick up on. Outside of the legal argument that we've heard back and forth, is there an underlying unfairness here as to what's occurring here? There's not an underlying unfairness, Your Honor, because they chose to proceed down a path that by law they understood what they were doing. In other words, they chose to take a risk and they got caught. So it's not an unfairness to them because they proceeded in the face of all this case law to do what they knew they couldn't do. Got caught taking a risk. You're not saying that the work wasn't done efficiently and properly, right? Well, on the pleadings, I think the pleadings would... We're here, of course, on a motion to dismiss, Your Honor, so the pleadings say that they did the work. And I would have to accept that for purposes of the argument for court here. But they did the work pursuant to contracts that they knew were unlawful. And carving out an exception for quantum Merowith, you heard that argument? Well, like we've said, and I think as they've now conceded, that requires you to overturn a great deal of your case law. But the person who most needs the protection here isn't a party to this case. It is the taxpayers who get stuck putting the bill for these things. And what they're doing, if you create a quantum Merowith theory of relief, is you're doing what this court said over 100 years ago in the Hope v. City of Alton cases. You're exposing the taxpayer to all the evils which statutes or ordinances, which are passed for his protection, are designed to prevent. You're saying that essentially these statutes that the legislature put in place to protect the taxpayers' money, protect the taxpayers who ultimately get stuck paying the bill, are nugatory. Has the school board in this case paid any money whatsoever? For this construction project? No. They've never paid any money to... So the taxpayers haven't been burdened yet. No, but what this case is about is whether or not they can be remanded so that they would be ordered to pay funds. They're making arguments, too, that, oh, an insurance company is going to pay it, but I would present to the court that their request for relief is for funds from the Board of Education. And they're saying that somebody else is going to fulfill it. That's certainly not what the pleadings are for. They're asking for money from the Board of Education for this work. So, just to finish up, this court has previously determined that it will not enforce an unlawful contract or an obligation because it would then make the court a party to the wrongful conduct. In fact, when there have been contracts that have been deemed illegal or void ad initio, it is held that work performed pursuant to an invalid contract, then the contractor is barred from proceeding under a quantum merit theory. In other words, as this court has said a long time ago, you don't get to say, well, I did it, I should get something, so the fact that I didn't follow the law should really be deemed irrelevant. That has never been the holding of this court, and it's really against public policy to do this. The case law says that when you attempt to come into court to seek relief for your own illegal conduct, that the court will leave you where they found you. And in this case, we asked this court to leave or store exactly where it placed itself. Was the appellate court wrong when they said you didn't cite any cases that hold that recovery under quantum merit and charge? Yes. We cited numerous cases of them, including Pope v. City of Alton and Romo v. City of Chicago, which were, I think it got convoluted because those cases were both filed, as I started off saying, they were filed in a sumsit, which is not even something I remember learning about in law school, but I think it's a very, very old type of case. But when I did nail down what a sumsit is and looked at those cases, they were talking about they were using common counts of sumsit, which include the quantum counts. And when you look at the language of the cases, when they're talking about this implied liability, this court, for a long period of time, has really understood that there's a distinction between implying a contract, which is what a contract implied in fact is, or implying a liability, which is what a quantum merit claim is. In other words, the duty defines what you have to pay. What are we going to obligate you to pay? What liability are we going to impose upon you because you've got a benefit? Did you have oral argument? We did not. You did not? No, I did not. You didn't have a chance to talk about a sumsit? No, unfortunately I did not. But, you know, I think it was a mistake. We talk about it all the time. Well, okay. One day I hope to be with you discussing it. But, you know, Your Honor, I think one of the things that the appellate court got wrong was they started to blend into the second classification the voidable cases, and that's just not what we have. And the cases that the appellate court relied on, the main case they relied upon was the Woodfield-Lanes case, which to me I don't understand why anyone was discussing quantum merit in that case because the appellate court said a quite astonishing thing, which was when you pass an ordinance, we expect you to follow it. And that's really what that case was about, is the municipality there refused to follow its own recapture ordinance. Wasn't that true here? I'm sorry? Isn't that true here? No, Your Honor. Because the board didn't comply with the statute. No, Your Honor. In that case, the municipality actually passed a recapture ordinance, which they're allowed to do under the municipal code. So they took action, which was lawful, and then refused to follow their own ordinance. The Board of Education here had complete inaction, which the appellate court case says is general. Except that it received five. It received. There were two contracts, right? The first one was like, they're both about $5 million or more. We're talking about $7.2 million at least. So the board received $7.2 million worth of benefit, and because it did not follow through on its own obligations, it doesn't have to pay. No, the board never did anything, Your Honor. It wasn't ever presented with contracts to approve. It never took any action. It didn't take an action irregularly. It took no action. It had inferior agents who took actions and attempted to create liabilities. And when the board was made aware on a continuous basis as to the $7 million of work that was being done on the building, what did the board do about it? The board did nothing. They were being told that there was work going on, but they were never presented with a contract, and they weren't being presented with bills. In a typical construction case, there's monthly bills that are being approved by the Board of Education. That just never happened here. So there was never a thought that the Board of Education understood that it was going to be liable for monies. It was sitting there almost in the shoes of an owner who has a general contractor with subs doing work. It didn't know that it was ever going to be responsible for paying any sums of money because it was never asked to do it. They were not approving bills. Really? You mean that the board didn't think it would have to pay the $7.2 million? No, Your Honor, because they were never asked to have a rolling construction contract where you're normally paying those bills on a monthly basis after they're approved. That didn't happen here. Those were never being put in front of the board. Didn't they have to know, though, that the insurance company was paying? The board, I think. Therefore, they were kind of lulled into this situation where, we don't have to pay anything because the insurance company is paying everything. And then something happened. The insurance company no longer is paying. So that's when the board kind of got nervous about it. I think it begs back to the position that the board never knew that there was these contractual obligations that could be imposed. They didn't know that there was a fire? No, they don't question that there was a fire. But what they didn't know was that there was these two contracts with Restore Construction Company that said they could be liable for money that was completely undefined. The reasonable value of services were what the contracts were. So they had these two contracts that didn't set forth a price whatsoever. They were never asked to approve those, Your Honor. Thank you, Your Honor. Mr. Gleeson. May I, Your Honor? Sure. Mr. Rasek said the school board president signed the contract. That's true, Your Honor. And the school superintendent as well? Yes, Your Honor. And if I may, the fire occurred on May 10, 2014, and the record in this case would indicate that the first contract was signed 22 days later. In the intervening period, there was a meeting of the Board of Education. The contract wasn't put forth there. It wasn't presented to the board for approval. To take his words, it was maybe signed in a back room. I don't know. But both the Open Meetings Act and the school code would allow the board to act very rapidly in emergency situations. Twelve days later doesn't sound like they're acting in an emergency, and several months later certainly doesn't sound like they're acting in an emergency. But more to the point, when there's an emergency and you're going to bypass all these statutory requirements, it requires a super majority vote of the board. So it's even more protection for the taxpayer built in that they would have. Yes, thank you. You answered my question. Thank you, Mr. Gleeson. Case number 125133, Restored Construction Company, Inc., et al., versus the School Board of Education at Provisor Township High School, District 209, will be taken under revisement as agenda number 10. Thank you, Mr. Ratzak and Mr. Gleeson, for your arguments.